IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA LEANNA BRADLEY, | No. 2:14-CV-1771-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 13) and defendant's cross-motion for summary judgment (Doc. 15).

/ / /

/ / /

/ / /

1

## I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on January 11, 2010. In the application, plaintiff claims that disability began on September 28, 2009. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on February 8, 2012, before Administrative Law Judge ("ALJ") W. Howard O'Bryan, Jr. In a February 29, 2012, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): cervical degenerative disc disease, lumbosacral mechanical dysfunction, lumbar facet dysfunction, fibromyalgia, diabetes mellitus, hypothyroidism, otitis media, and vitamin D deficiency;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: full range of medium work;

4. Considering the claimant's age, education, work experience, residual functional capacity, the claimant can perform her past relevant work as a juvenile probation officer and service station attendant.

After the Appeals Council declined review on May 2, 2014, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

1  v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's
2  decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.
3  Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative
4  findings, or if there is conflicting evidence supporting a particular finding, the finding of the
5  Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).
6  Therefore, where the evidence is susceptible to more than one rational interpretation, one of
7  which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.
8  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal
9  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th
10 Cir. 1988).

### III.  DISCUSSION

In her motion for summary judgment, plaintiff argues that the ALJ failed to provide legally sufficient reasons for finding her testimony not credible.  The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

/ / /

1    If there is objective medical evidence of an underlying impairment, the
Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely
because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d
341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the
> [symptom] itself, or the severity thereof.  Nor must the claimant produce
> objective medical evidence of the causal relationship between the
> medically determinable impairment and the symptom.  By requiring that
> the medical impairment "could reasonably be expected to produce" pain or
> another symptom, the Cotton test requires only that the causal relationship
> be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in
Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged,
including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,
947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the
claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent
testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a
prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)
physician and third-party testimony about the nature, severity, and effect of symptoms.  See
Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the
claimant cooperated during physical examinations or provided conflicting statements concerning
drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the
claimant testifies as to symptoms greater than would normally be produced by a given
impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See
Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

/ / /

/ / /

/ / /

4

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

As to plaintiff's testimony, the ALJ noted:

> The claimant testified at the hearing that she has chronic pain. She reported that pain gives her anxiety. She reported that she cannot sit for long periods. She cannot use her arms because her neck causes pain that extends between the shoulder blades. She reported that the lower back has radiating pain that goes in the hip, feet, and legs. She reported that she gets relief in a reclining position. She reported anxiety and heart palpitations. She reported that she cut out caffeine. She testified that she can stand for 10 to 15 minutes before she has to lean or sit. She reported that she cannot do a Wal-Mart shopping trip. She reported difficulty going to sleep and staying asleep. She reported no social activities. She reported that she only read and does not go out. She reported that she cannot take care of herself and her roommate helps her wash her hair and get dressed.

> The claimant reports that she can perform personal care, cook, clean, do laundry, handle finances, drive, shop, has normal social activities, enjoys reading, light gardening, and board games, can follow instructions, can pay attention, and can walk 15 minutes (Exhibit 9E).

Next, the ALJ noted a third-party report on plaintiff's activities:

> A third party adult function report was completed by Rhonda Boucher, claimant's roommate. She reported that the claimant can prepare complete meals three times a week. The claimant's son and daughter live with them. The claimant's son was diagnosed with schizophrenia and the claimant makes sure he takes his medications. She cleans the house, does dishes, and does some laundry. The claimant drives a car and rides in a car. She can manage her own finances. She reads, watches television, sews, and plays board games. The claimant socializes and catches up at dinner. She shops for groceries one to two times per month (Exhibit 10E).

Regarding plaintiff's credibility, the ALJ concluded:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

Finally, the ALJ discussed the objective evidence supporting this conclusion:

> The claimant has received ongoing treatment from Darryl Robinson, M.D., for degenerative disc disease. This treatment has been routine and conservative. The claimant has received epidural steroid injections which provided relief (Exhibit 4F). The claimant received lumbar facet joint medial branch block injections in June 2010 which were noted as helpful (Exhibit 13F). The claimant reported that Percocet has not been sufficient in relieving her pain. She was encouraged to exercise. Additionally, she has been repeatedly asked by Dr. Robinson to consider repeat lumbar median branch blocks and a cervical facet median branch block when financially able (*Id.* And Exhibit 24F). In order to receive benefits, the claimant must follow treatment prescribed by his doctor if this treatment can restore her ability to work. Upon failure to follow the prescribed treatment, benefit payments may be stopped, or in this case taken into consideration in not awarding benefits (citations omitted). It has been established in the claimant's medical evidence of record that medial branch block injections were helpful in relieving and controlling her pain, but the claimant has not proceeded with the recommended treatment.

///

///

In February 2011, MRI of the cervical spine shows small disc bulges with the foramina remaining uncompromised (Exhibit 22F, p. 4). In February 2009, MRI of the lumbar spine was negative. In May 2009, MRI of the cervical spine indicated neural foraminal narrowing C6-7, moderate, bilaterally; C6-7 broad-based disc bulge; and small posterior disc osteophyte complexes C4-5 and C5-6 (Exhibit 4F).

The claimant reported to the consultative examiner that she has a Tarlov cyst on her spinal cord that is inoperable, resulting in pain (Exhibit 7F). However, Dr. Robinson noted that the claimant's Tarlov cyst was felt to be asymptomatic (Exhibit 4F).

The claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The claimant cares for her son with schizophrenia. She cooks, cleans, reads, drives, performs personal care, and walks for 15 minutes.

The claimant reports taking Percocet, which is supported by the medical evidence of record. However, other pain management methods such as exercise and facet branch blocks are recommended which may provide greater relief.

* * *

As for the opinion evidence, Tyler Petree, D.C., has provided treatment since May 28, 2007, for neck pain/stiffness, mild back pain/stiffness, low back pain/stiffness, and numbness/tingling into the right arm. He provided diagnoses of cervical neuritis; thoracalgia; lumbar neuritis; and lumbalgia. It was noted that the overall response to care is improving and the prognosis is fair (Exhibit 6F). A chiropractor is not considered an acceptable medical course, however, the findings are still given some consideration regarding the description of the claimant's impairments (citation omitted).

Raymond Fuchs, Ph.D., consultative examiner, provided that "It is likely that a work environment with a high degree of socialization, a pressure for a rapidity of production, and criticality with review by others would be a circumstance she would handle very well before she would incur another 'nervous breakdown'" (Exhibit 9F). This opinion is provided some weight.

The State agency medical consultants completed a psychiatric review technique form considering the claimant's mental impairments under 12.05 anxiety-related disorders and 12.08 personality disorders. It is provided that the claimant's mental impairments are not severe. She has mild restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, and pace, and no episodes of decompensation (Exhibit 10F). The assessment was affirmed at the reconsideration level (Exhibit 16F). The Administrative Law Judge provides great weight to this opinion.

The State agency medical consultants provided that the claimant can perform at the "medium" exertional level as defined in the regulations (Exhibit 11F).  Minimal weight is provided to this opinion based on subsequent medical evidence and new medical opinions.  At the reconsideration level, the State agency medical consultants provided that the claimant can perform at the "light" exertional level as defined by the regulations (Exhibit 17F).  The Administrative Law Judge provided great weight to this opinion.

First, plaintiff argues that the ALJ's finding that she received only routine and conservative treatment is not supported by evidence that she received multiple epidural/branch block injections and relied on narcotic pain medication.  Defendant essentially concedes the point and the court agrees.

Next, plaintiff argues that the ALJ erred in relying on her failure to receive injections.  Specifically, plaintiff states:

> The ALJ . . . appears to be finding Ms. Bradley not credible because she did not receive additional injections despite the doctors's recommendations.  The ALJ states that this is a failure to follow prescribed treatment.  (A.R. 28).  What the ALJ does not factor into this "failure" is the repeated notations that Ms. Bradley did not receive the additional injections because she was not able to afford them.  (A.R. 393, 399, 419, 420, 422, 521, and 523).  The ALJ's reliance on a failure to follow prescribed treatment despite this fact is clear error and not sustainable on review. . . .

Plaintiff's citations to the record reflect that she reported to her treating doctor she was having "financial problems" in January 2010.  She also reported in October and November 2009 that she was "unable to afford injections."  In a September 2010 medical note, the doctor stated: "Consider a bilateral four-level lumbar median branch blocks when financially able."  Similarly, plaintiff's treating doctor stated in August 2010: "Consider repeat bilateral four-level lumbar median branch blocks when financially able."  Defendant addresses this issue in a footnote as follows:

> The Commissioner acknowledges Plaintiff's allegation that she was unable to afford additional epidural injections, but notes that despite not receiving them, she continued to see her treating physician and indicated her pain was relieved by the medications that were being prescribed (AT 393-94, 419, 420, 523).  In addition, Plaintiff offered no

8

explanation why she could not obtain medical care through the Veterans' Administration following her honorable discharge from the Air Force. . . .

Contrary to defendant's contention that the medications plaintiff was receiving controlled her pain symptoms, the ALJ noted in the hearing decision that additional injections were frequently recommended. The record supports plaintiff's position that her doctors repeatedly recommended additional injections as the most effective means of managing plaintiff's pain symptoms, but that she was unable to afford that treatment. Defendant's argument regarding possible access to injections through the Veterans' Administration is entirely unsupported by citation to any evidence of record that such benefits were available to plaintiff and would have covered the recommended injections.

Next, plaintiff argues that the ALJ cited MRI findings "without stating how these purportedly belie Ms. Bradley's testimony." The court does not agree. It is clear from the context of the entire hearing decision that the ALJ found the minimal MRI findings showed a lack of objective medical evidence to support plaintiff's subjective complaints.

Plaintiff also argues that the ALJ improperly found a contradiction with respect to plaintiff's report regarding a Tarlov cyst on her spinal cord. According to plaintiff:

> Next, the ALJ states that Ms. Bradley reported to the consultative examiner that she has a Tarlov cyst on her spinal cord that results in pain, however, Dr. Robinson noted that the cyst was asymptomatic. (A.R. 28, citing Exhibit 7F [A.R. 464-471] and Exhibit 4F [A.R. 416-433]). This is not sufficient to find Ms. Bradley not credible. In the "Chief Complaint" section of the consultative examiner's report, Ms. Bradley reports chronic pain from the mid back to low back, left hip, and left foot. (A.R. 465). Then it is listed that she has a Tarlov cyst that is inoperable and degenerative disc disease. *Id.* Nowhere in the "Chief Complaint" section is it reported that Ms. Bradley ascribed her pain to the Tarlov cyst. The consultative examiner's assessment lists "chronic back pain with radiculopathy secondary to Tarlov cyst per hx." (A.R. 467). Thus, it is the CE's conclusion or misinterpretation of Ms. Bradley's reports that assigns back pain as a result of the cyst. In sum, there is no evidence of deception or misrepresentation by Ms. Bradley.

/ / /

/ / /

1    Again, defendant responds to this argument in a footnote:

2        The ALJ was justified in finding Plaintiff's report of pain due to an
     "asymptomatic" cyst weighed against her credibility. "One strong
3    indication of the credibility of an individual's statements is their
     consistency, both internally and with other information in the case record."
4    SSR 96-7p. . . . Here, the ALJ noted Plaintiff's complaint of pain due to
     the cyst to the examining physician versus her treating physician's opinion
5    that the cyst was "felt to be unrelated to her symptoms." (AR 28, 432,
     465-67). . . .

6        Defendant's argument is unpersuasive. The record contains an April 26, 2010,
7    report by agency examining doctor Robin Hall, M.D. at Exhibit 7F. Regarding the Tarlov cyst,
8    Dr. Hall notes: "She says she has a Tarlov cyst on her spinal cord that is inoperable." Plaintiff is
9    correct in observing that she never attributed her pain symptoms to the cyst.[1]

10       Finally, plaintiff argues that the ALJ improperly relied on her daily activities.
11   According to plaintiff:

12       The ALJ completely mischaracterized Ms. Bradley's daily
13   activities. Regarding caring for her son, Ms. Bradley's complete statement
     is that her son is 18 and she supervises him to make sure he goes to the
14   doctors and takes his meds and that a lot of the time she asks someone to
     drive them to the doctor because she is in too much pain. (A.R. 232).
15   Regarding cooking, Ms. Bradley's complete statement is that she cooks
     when she can, usually three times a week, and that it takes hours to prepare
16   the meal because she needs to lie down in between preparing the food,
     putting it together, cooking, and eating. (A.R. 233). She also cannot
17   prepare meals often because she is in "too much pain or too fatigued to
     cook." *Id.* Regarding cleaning, Ms. Bradley's complete statement is that
18   she can do dishes typically three times a week, sometime vacuum, and do
     laundry once a week. (A.R. 233-234). In addition, Ms. Bradley stated that
19   up to five days a week her back, neck, left hip, or leg "hurts so much" that
     she cannot get around to do the work and up to three days a week she

---

21   [1]    Plaintiff also states:

22       Even assuming arguendo that Ms. Bradley did tell the consultative
     examiner that the Tarlov cyst caused her back pain, reliance on an
23   apparent misunderstanding of the cause of her pain is nothing more than
     nit picking. It is undisputed that she has a cyst on her spine. It is hardly
24   inconceivable for a person to believe that a cyst on their spine is causing
     pain.
25

26   Plaintiff's point is well-taken. Given that plaintiff is not a medical expert, she can hardly be
     faulted for not knowing the precise etiology of her pain symptoms.

10

cannot even bend or use her arms due to pain. (A.R. 234). With respect to driving, Ms. Bradley reported that she drives maybe 2-3 times a week when her neck and shoulders are okay and she is not on pain pills that make her Groggy/spacey. (A.R. 234). As for reading, Ms. Bradley stated that she can still read occasionally. (A.R. 235). With respect to walking, Ms. Bradley's statement is that she walks five to ten minutes but after 15 minutes she cannot go any further due to pain. Finally, with respect to personal care, Ms. Bradley's complete statement is as follows: Dress – sometimes, however, up to three days a week she cannot bend or lift her leg up far enough to put on pants and needs help; Bathe – sometimes, however, needs help getting in and out. . .; Care for hair – sometimes she cannot wash her hair and gets help from roommate; Shave – she does not shave anymore; Feed self – no problems; Use of the toilet – no problem. (A.R. 232).

In support of her argument, plaintiff cites Garrison v. Colvin, 759 F.3d 995 (9th Cir. 2014), in which the Ninth Circuit recognized that the critical difference between activities of daily living and activities of full-time employment is that, for daily activities, a person has flexibility in scheduling tasks, can get help from others, and is not held to a minimum standard of performance. In Garrison, the court admonished: "The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." Id. at 1014-16. According to defendant, Garrison "is just one Ninth Circuit panel expressing its opinion on the utility of using a claimant's activities of daily living as a credibility factor." Defendant argues that Garrison should be limited to its facts and not extend further.

To the extent the law in this circuit with respect to reliance on daily activities, the court does not reach the issue. Citing Carmickle, 533 F.3d at 1162-63 and n.4, defendant correctly observes that "the elimination of any one factor does not mean that the ALJ's entire credibility assessment was improper." Here, aside from daily activities, and not discussed by either party, the ALJ noted that plaintiff failed to follow recommended treatment, specifically exercise. This, along with the minimal objective evidence, supports the ALJ's credibility assessment.

///

With respect to the objective medical evidence, the court notes that the medical opinions which were accepted by the ALJ are inconsistent with plaintiff's testimony of debilitating pain, and plaintiff does not challenge the ALJ's analysis of the medical opinions.

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

    1.    Plaintiff's motion for summary judgment (Doc. 13) is denied;

    2.    Defendant's cross-motion for summary judgment (Doc. 15) is granted; and

    3.    The Clerk of the Court is directed to enter judgment and close this file.

DATED:  March 16, 2016

                                                                    */s/ Craig M. Kellison*
                                                               **CRAIG M. KELLISON**
                                                               UNITED STATES MAGISTRATE JUDGE